UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Richard J. Gobis, Jr.,
    Claimant

    v().                                        Civil No. 15-cv-268-SM
                                               Opinion No. 2016 DNH 137

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant


**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Richard Gobis, Jr., moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act, and Supplemental Security Income Benefits under Title XVI.  See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.  <u>Procedural History</u>.

In the spring of 2012, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since March 11, 2012.  Claimant was 43 years old at the time.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In October of 2013, claimant, his wife, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo.  The following month, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then sought review by the Appeals Council, which denied his request.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 11).  In response, the Acting

2

Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 14).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 15), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it

is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places the initial burden on the claimant, who must establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an

4

inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

5

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: March 11, 2012. Admin. Rec. at 78. Next, he concluded that claimant suffers from the following severe impairments: "mononeuritis multiplex, degenerative disc disease, depression, and anxiety." Id. But, the ALJ determined that claimant's impairments, whether viewed alone or in combination, did not meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 79.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of

"light" work.[1]  He noted, however, that claimant can stand and walk for a maximum of only five hours per day, and he can sit for a maximum of six hours per day.  Admin. Rec. at 80.  The ALJ went on to note that:

> The claimant can understand, remember, and carry out moderately complex tasks involving 4 to 5 step instructions.  He can interact with coworkers, supervisors, and the public in a superficial and routine manner.  He can interact with the public only occasionally.  The claimant can make simple decisions and sustain concentration for one hour periods at a time with short breaks of two or three minutes to refocus.  He can work in an environment with repetitive tasks.  The claimant cannot perform work with more than occasional[] pushing and pulling and use of foot controls.  He can perform frequent, but not constant fingering and fine manipulation.

Admin. Rec. at 80.  In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work, all of which was performed at either the "medium"

---

[1] "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

or "heavy" exertional level.  Id. at 84.  See also Id. at 144-45 (vocational expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform" and that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Id. at 85.  Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.  Id. at 86.

## Discussion

Claimant challenges the ALJ's decision on three grounds, asserting that he erred by: (1) failing to afford controlling weight to the opinions of one of claimant's treating medical sources; (2) improperly discounting claimant's credibility; and

(3) erroneously determining claimant's residual functional capacity.

I. <u>Medical Source Opinions</u>.

In March of 2012, claimant began seeing Jennifer Jones, DO, approximately once every one to four months. Admin. Rec. at 747. In July of that year, claimant was examined by Uri Ahn, M.D., at the New Hampshire NeuroSpine Institute. Dr. Ahn performed a physical examination and reviewed claimant's x-rays and MRI report, none of which revealed anything remarkable, atypical, or abnormal. <u>See generally</u> <u>Id.</u> at 490. <u>See also</u> <u>Id.</u> at 558 (report of Thomas Brundz, PA, making substantially similar findings). In the "Assessment and Plan" portion of his report, Dr. Ahn concluded:

> A 43-year-old man with a history of neck and low back pain. Richard currently states that he is disabled, and I <u>certainly would not state</u> that he is disabled based on his neck and lower back. I have recommended a course of physical therapy and daily anti-inflammatory pill. <u>Richard has refused this</u>. His wife insists that "something <u>is</u> wrong." I have told her that my primary diagnosis is disc degeneration based on the results of the MRI and x-rays, and the wife seemed very unsatisfied with this explanation. I have given Richard and his wife the names of 3 other surgeons, . . . that they can see as a second opinion, and, based on Richard's refusal to proceed with treatment as recommended by myself, I will see him back p.r.n.

<u>Id.</u> (emphasis supplied).

9

In response, claimant's wife wrote to Dr. Jones, noting that Dr. Ahn's opinions "hurt [claimant's] case for receiving disability," and soliciting a statement from Dr. Jones indicating that she was "<u>not</u> in agreement with Dr. Ahn." <u>Id.</u> at 756 (emphasis in original). Dr. Jones completed a "Physical Residual Functional Capacity Questionnaire" and a "Lumbar Spine Residual Functional Capacity Questionnaire." In them, she opined that: (1) claimant suffers from mononeuritis multiplex, with "variable but constant pain symptoms;" (2) pain or other symptoms would interfere with claimant's attention and concentration frequently, if not constantly; (3) claimant could likely walk less than one city block without rest or severe pain; (4) claimant would require unscheduled breaks at work and the ability to shift from a seated to standing position at will; and (5) as a result of his impairments, claimant would likely be absent from work more than four days each month. <u>Id.</u> at 747-55. Claimant asserts that the ALJ erred by failing to afford Dr. Jones' opinions controlling weight.

While opinions from treating sources are typically afforded great (if not controlling) weight, <u>see generally</u> Social Security Ruling, <u>Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions</u>, SSR 96-2p, 1996 WL 374188 (July 2, 1996), there is no per se rule

10

requiring the ALJ to give greater weight to the opinion of a treating source.  To be entitled to controlling weight, a treating source's opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [cannot be] inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

Here, the opinions offered by Dr. Jones are inconsistent with substantial evidence in the record.  See, e.g., Admin. Rec. at 215-17 (opinions of state agency physician Jonathan Jaffe, M.D., that claimant could perform tasks consistent with "light" work); Id. at 214 (opinions of state agency psychologist Laura Landerman, Ph.D, finding, inter alia, that claimant's "statements are [only] partially credible, as he did not present nor perform at recent CPPA as severely impaired as per self report"); Id. at 558-59 (report of Thomas Brundz, P.A., who opined that claimant walked normally, had normal reflexes and strength in all extremities, and had a "fairly normal" MRI, with "mild disc changes at L4-L5, but no significant central canal foraminal stenosis" and "no nerve compression;") Id. at 770-76 (reports of Ekaterina Hurst, M.D., who concluded that claimant's overall condition was both mild and improved, despite claimant's assertion a month earlier that his depression was "10" on a

11

scale of 1 to 10 and claim that anxiety prevented him from working); Id. at 593-94 (report of Todd Noce, D.O., comparing claimant's earlier MRI with one performed in April of 2013, and concluding that claimant suffers from "mild degenerative changes within the cervical spine but no significant narrowing of the spinal canal or neural foramina.  There is no interval change from prior study."); Id. at 786 (report of Mark Powers, MSW, from January of 2013, noting that claimant reported that he goes "for 4 mile walks 2-3 times/week with his wife" (though claimant's wife questioned, but did not deny, that at the hearing)).[2]

Because the opinions of Dr. Jones were inconsistent with substantial evidence in the record, and because the ALJ adequately explained his reasons for discounting Dr. Jones'

---

[2]   Parenthetically, the court notes that claimant challenges the ALJ's reliance on his statement about having taken 4-mile walks, two to three times a week.  According to claimant, "A review of the record reveals a progress note dated January 21, 2013, from the plaintiff's therapist Mark Powers, MSW, LICSW, who wrote: 'However goes 4 mile walks 2-3 times/week with his wife.'  Read out loud and you say, 'goes for mile walks 2 to 3 times a week with his wife.'  If read carefully, the meaning is clear.  There is no other way to interpret this simple sentence."  Claimant's memorandum (document no. 11-1) at 8.  But, claimant misreads the record.  Mr. Powers actually reported that claimant said that he "goes for 4 mile walks 2-3 times/week with his wife."  Admin. Rec. at 786 (emphasis supplied).  Claimant's argument is, therefore, unavailing.

opinions, the court cannot conclude that the ALJ erred in failing to afford those opinions controlling weight.

II. Claimant's Credibility.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as his own description of those physical limitations, including his subjective complaints of pain. See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996). If the claimant has demonstrated that he suffers from an impairment that could reasonably be expected to produce the pain or side effects he alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit his ability to do basic work activities. Part of that evaluation necessarily involves an assessment of claimant's credibility. See SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996). And, in assessing the claimant's credibility, that ALJ should consider the following factors: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's alleged pain or other symptoms; factors that precipitate and aggravate those symptoms; the type

13

dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined him and/or reviewed his medical records, and to consider the other relevant factors identified by the regulations and applicable case law. Part of his credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability." Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court. See, e.g., McNelley v. Colvin, No. 15-1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.") (quoting Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195

14

(1st Cir. 1987)); Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts") (citation omitted).

Here, in reaching the conclusion that claimant was not entirely credible when testifying about the disabling nature of his impairments, the ALJ considered each of the relevant factors identified above.  See Admin. Rec. at 82-83.  Additionally, as noted above, there is evidence in the record which suggests that claimant tended to overstate the symptoms of his impairments.  See, e.g., Id. at 214, 490.  And, to the extent claimant suggests his medical diagnoses necessarily support his subjective complaints of disabling pain, see, e.g., Claimant's memorandum at 16 and 18, he is mistaken.  Medical diagnoses, such as "bulging disc," Admin. Rec. at 558 and "cervical spine with mild degeneration, no evidence of significant neurologic impingement," id. at 490, are "medical labels which carry no readily discernible message about the physical capacities of an individual suffering from the conditions they denote."  Class Rosario v. Secretary of Health & Human Services, 1990 WL 151315 at *2 (1st Cir. July 16, 1990).  See also McKenzie v. Commissioner, Social Security Administration, 2000 WL 687680 at

15

*5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."). As the United States District Court for the District of Massachusetts has noted, "[f]or Social Security disability purposes, the issue is not whether an impairment exists, but whether it is sufficiently severe to prevent work." Stefanowich v. Colvin, No. CIV.A. 13-30020-KPN, 2014 WL 357293, at *1 (D. Mass. Jan. 30, 2014) (citations omitted).

For the foregoing reasons, as well as those set forth in the Acting Commissioner's memorandum (document no. 14-1) at 9-15, the court concludes the ALJ did not err in making his credibility finding.

III. Claimant's Residual Functional Capacity.

Finally, claimant challenges the ALJ's determination that he retained the RFC to perform a range of light work. But substantial record evidence supports the ALJ's conclusion. For example, the "Residual Functional Capacity" report completed by state agency physician Jonathan Jaffe, M.D. (Admin. Rec. at 215-17), as well as the Mental Health Evaluation Report - Adult" completed by state agency psychological consultative examiner Darlene Gustavson, Psy.D. (Id. at 507-12), are entirely

16

consistent with the ALJ's RFC determination.  Indeed, that RFC is slightly <u>more</u> restrictive than the opinions rendered by those "highly qualified" medical professionals, who are also "experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(e)(2)(i).  <u>See also</u> 20 C.F.R. § 416.927(e)(2)(i).  The ALJ's RFC determination is also consistent with claimant's repeated "normal" or "mild" clinical examination findings, as well as the results of claimant's diagnostic imaging.  The only notable exception is the "Physical Residual Functional Capacity Questionnaire" completed by Jennifer Jones, D.O.  Admin. Rec. at 747-55.  But, as discussed above, the ALJ supportably concluded that Dr. Jones' opinions were entitled to "little weight," in light of the substantial record evidence that tended to undermine them.

## Conclusion

Judicial review of the ALJ's decision is both limited and deferential.  This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act.  Consequently, the issue before the court is not whether it believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of

evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citation omitted). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record, as well as the arguments advanced by both the Acting Commissioner and the claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of the ALJ's decision (November 1, 2013). The ALJ's assessment of claimant's credibility, as well as his RFC determination and his conclusions concerning the

opinions of Dr. Jones, are well-reasoned and adequately supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's thorough and persuasive legal memorandum (document no. 14-1), claimant's motion to reverse the decision of the Commissioner (document no. 11) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 14) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 12, 2016

cc: Judith E. Gola, Esq.
    Robert J. Rabuck, AUSA